# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

MICHAEL D. MAPLES, M.D.                                        PLAINTIFF

VS.                                        CIVIL ACTION NO. 3:04-cv-492WS

CONTINENTAL CASUALTY COMPANY                              DEFENDANT

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is the motion of the defendant Continental Casualty Company

for summary judgment submitted pursuant to Rules 56(b)[1] and (c)[2] of the Federal

Rules of Civil Procedure [**Docket No. 14-1**].  The plaintiff Dr. Michael D. Maples

brought this lawsuit pursuant to Title 29 U.S.C. § 1132(a)(1),[3] the civil enforcement

provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), to

recover long term disability benefits allegedly denied him by the defendant,

Continental Casualty Company and Plan Administrator Continental Casualty Company

---

[1]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[2]Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[3]Title 29 U.S.C. § 1132 states that a "civil action may be brought – (1) by a participant or beneficiary – (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; ... ."

(collectively "Continental").  ERISA regulates employee welfare benefit plans that provide care or benefits in the event of sickness, accident, disability or death.  *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987).  This court reviews the denial of such benefits *de novo*, unless the benefit plan gives the administrator or fiduciary "discretionary authority" to determine eligibility for benefits or to construe the terms of the plan.  *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 102, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).  If the benefit plan gives the administrator the requisite authority, a district court may review the administrator's determination only under an abuse of discretion, or arbitrary and capricious standard.  *Id.*, *Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1298 (5th Cir. 1995);  *Chevron Chemical Company v. Oil, Chemical and Atomic Workers Local Union 4-447*, 47 F.3d 139, 142-145 (5th Cir. 1995).

In the instant case, the parties agree that this court's review is to be performed under the standard of abuse of discretion, or whether the administrator's determination was arbitrary and capricious.  Under this standard, this court owes due deference to the administrator's factual conclusions which reflect reasonable and impartial judgment.  *Southern Farm Bureau Life Insurance Company v. Moore*, 993 F.2d 98, 101 (5th Cir. 1993);  *Pierre v. Connecticut General Life Insurance Company/Life Insurance Company of North America*, 932 F.2d 1552, 1562 (5th Cir.1991).

The parties clash over their perspectives of the evidence and the law.  Although plaintiff contends that the material facts are in dispute, a circumstance which would

frustrate defendant's motion for summary judgment, defendant claims otherwise and, further, that the applicable law favors its motions.

## Jurisdiction

This court's jurisdictional predicate is complete preemption.  District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331;  *Frank v. Bear Stearns & Company*, 128 F.3d 919, 922 (5th Cir. 1997).  When a claimant seeks relief "within the scope of [ERISA's] civil enforcement provisions," his or her claims are subject to complete preemption.  *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

## Pertinent Facts

The plaintiff is Dr. Michael D. Maples, a former partner with Cardiovascular Surgical Clinic, P.A. in Jackson, Mississippi, who has practiced for many years as a cardiovascular surgeon.   Dr. Maples began experiencing severe and debilitating pain in his lower back and extremities in 2000.  At first, he was satisfied with the conservative treatment of neurologists and pain management physicians.  Later, after numerous tests, procedures and clinical evaluations, and after he was diagnosed with a large herniation of his L-4-5 lumbar discs, a condition severe enough to require surgery, he opted for surgery.  Dr. Philip A. Azordegan performed the surgery

in January of 2001.  Dr. Azordegan recorded in his notes that Dr. Maples' L5 nerve

root was "grossly distorted and erythematous,[4] with a considerable amount of

compression evident."

After his surgery and a period of recovery, Dr. Maples attempted to return to

work, but he continued to suffer pain in his lower back.  So, he contacted the

Biomedical Engineering Department at Mississippi Baptist Medical Center in Jackson,

Mississippi, and had them design and build a sling-like apparatus for his use while in

surgery.  This device was expected to alleviate some of the pressure placed on his

back during routine 6-10 hour cardiovascular surgeries;  however, the device affected

Dr. Maples' range of motion and did not solve the problem.  Ultimately, Dr. Maples'

partners concluded that Dr. Maples' back pain could be detrimental to his patients

during surgery and, in their estimation, Dr. Maples was permanently disabled and

could no longer work as a cardiovascular surgeon in accordance with the terms of his

employment contract.

Dr. Maples resigned his duties as a cardiovascular surgeon and sought long

term disability benefits through a group disability plan offered by the Cardiovascular

Surgical Clinic, P.A.,[5] claiming August 31, 2001, as his last day of work.  Dr. Maples

claimed that he was unable to perform open heart surgery any longer due to extreme

_____

[4]A condition characterized by a redness of the tissue due to engorgement of the
capillaries in the region.  *See* The American Heritage® Dictionary of the English Language,
Fourth Edition copyright ©2000.

[5]According to Continental, the Plan provides for monthly benefits through age 65, with
the maximum benefit equating to 60% of a beneficiary's monthly salary, subject to a maximum
benefit of $5000.00 a month.

pain and the inability to lean over the surgical table for long periods of time as this type surgery often requires.

Dr. Maples' group insurance disability plan specifically refers to Dr. Maples' specialty as a cardiovascular surgeon, and that Dr. Maples would be considered disabled if he was continuously unable to perform the "Material and Substantial Duties of His Specialty" and not earning greater than 80% of his previous income.  The parties agree that Dr. Maples began earning less than 80% of his previous income once he ceased his duties as a cardiovascular surgeon.

Dr. Maples' application for long term disability was denied on January 9, 2002. Dr. Maples appealed this determination and on April 26, 2002, after review by the Appeals Team Leader for the Group Disability-Claim Administration, the denial of Dr. Maples' application was affirmed.  Relying on the review and evaluation of Dr. Joseph J. Jares, III, a neurologist, the Appeals Team Leader determined that the diagnostic findings did not support a functional loss or impairment that would prevent Dr. Maples from performing in a full-time capacity as a cardiovascular surgeon.

Dr. Jares reviewed this case in November of 2001, and based his assessment of Dr. Maples' claim on the medical history, the post-surgery reports and a lumbar myelogram[6] dated August 20, 2001, which showed normal test results.   Dr. Jares found no information concurrent with his review which addressed Dr. Maples'

---

[6]A myelogram is an x-ray examination performed by a radiologist to help detect any abnormalities of the spine, spinal cord, or surrounding structures. The radiologist interprets the information from the procedure and reports it to the treating physician.  The procedure involves the injection of a contrast material or dye which can be seen on an x-ray. http://www.spineuniverse.com.

neurological status.  He found no reports of any reflex loss, muscle weakness or

atrophy, and no sensory disturbance.  Dr. Jares noted that the post-operative MRI

showed a successful surgery and was otherwise unremarkable.  He noted that Dr.

Maples had presented no electrophysiological[7] data to support a claim of any L5 nerve

root irritation.  Dr. Jares concluded that the medical records did not demonstrate a

functional impairment that continuously would have prevented Dr. Maples from

performing the material and substantial duties of his specialty;  instead, Dr. Jares

found that a two or three month period of continuous disability following surgery would

be reasonable.  Finally, Dr. Jares found that Dr. Maples' claims of diminished capacity

were based solely on subjective complaints of pain, and that the most recent

diagnostic testing was inconsistent with lumbar radiculopathy (nerve irritation caused

by damage to the discs between the vertebrae) as suggested by Dr. Maples' treating

physician Dr. Phillip Azordegan, a neurologist.  Dr. Jares noted that he found no

progress notes from Dr. Azordegan in the medical record after January 15, 2001,

except for a letter dated September 14, 2001, which stated that Dr. Maples continued

---

[7]For instance, an electromyogram (EMG) is a diagnostic study used to provide
information about the integrity of the muscles and the nerves in the body.  Using a computer,
monitor, amplifier, loudspeaker, stimulator and high tech filters the examiner actually sees and
hears how muscles and nerves are working. As part of the EMG a very small needle is
inserted into various muscles in the arm, leg, neck or back where symptoms are reported.  A
nerve conduction study (NCS) is one part of a comprehensive nerve and muscle diagnostic
test. Like an EMG, a NCS examiner uses a computer, monitor, amplifier, loudspeaker,
stimulator and high tech filters to monitor the functioning nerves and muscles in question.
*See Electromyogram and Nerve Conduction Study,* North American Spine Society,
www.spine.org.

to have back pain.  Dr. Jares found this statement to be inconsistent with the negative

MRIs.

Thus, based on the medical history and the review performed by Dr. Jares,

Continental denied Dr. Maples' application for long term or permanent disability, giving

rise to the instant dispute now before the court and the motion for summary judgment

by the administrator of the ERISA plan now under consideration.


## SUMMARY JUDGMENT STANDARD

Summary judgment is authorized if the movant establishes that there is no

genuine dispute about any material fact and the law entitles it to judgment.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Summary judgment shall be rendered when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 106

S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Disputes about material facts are genuine if

the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  *Anderson,* 106 S.Ct. at 2511.  When ruling on a motion for summary judgment,

the court is required to view all inferences drawn from the factual record in the light

most favorable to the nonmoving party.  *Matsushita Electrical Industries Company v.*

*Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Once the

moving party has made an initial showing that the evidence does not support the

nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied* , 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).  Rule 56 does not impose a duty on this court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Ragas v. Tennessee Gas Pipeline Company* , 136 F.3d 455, 458 (5th Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

## **APPLICABLE LAW**

"An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial.'"  *Lain v. UNUM Life Insurance Company of America*, 279 F.3d 337, 342 (5th Cir. 2002), quoting *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 299 (5th Cir. 1999).  An administrator's decision is not arbitrary and capricious if it is supported by substantial

8

evidence.  *MediTrust Financial Services Corporation v. Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ellis v. Liberty Life Assurance Company of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).  If the plan administrator's decision "is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Id*.

A decision is arbitrary when made "'without a rational connection between the known facts and the decision, or between the found facts and the evidence.'" *Lain*, 279 F.3d at 342.  Additionally, a decision may be arbitrary if a conflict of interest can be established.  A "sliding scale" is applied to the abuse of discretion or arbitrary and capricious  standard where it is determined that an administrator has acted under a conflict of interest. *Vega*, 188 F.3d at 296.  The greater the evidence of conflict on the part of the administrator, the less deferential a court's abuse of discretional standard should be.  *Id.*, at 297.

Dr. Maples argues that severe conflicts of interest were present in the processing of his claim for disability and the subsequent appeal decision.  Dr. Maples, though, admits that the findings of the independent medical examiner Dr. Jares are not subject to his conflict of interest contention.  The conflict, if any, lies with the employees of Continental who, says Maples, have ignored the MRIs, the medical findings, and the medical opinion of Dr. Maples' treating physician Dr. Azordegan.  Reduced to its simplest form, Dr. Maples' conflict of interest argument asserts that

9

because members of the initial committee considering the claim for permanent disability were Continental employees or agents, a conflict is created by their participation in these proceedings because they were self-interested, had a financial stake in the outcome, and ignored the medical evidence.

This court has focused on whether the record adequately supports the administrator's decision. *Kiper v. Novartis Crop Protection, Inc.*, 209 F.Supp.2d 628, 633 (M.D. La. 2002), citing *Vega* at 296-97. The salient feature of the record before this court is the independent review of Dr. Jares. Although mindful of Dr. Maples' challenges, this court is satisfied that the administrative decision to deny benefits is supported by substantial evidence, even though that evidence is disputed by Dr. Maples. Accordingly, this court finds itself in agreement with the determination made by the plan administrator.

## CONCLUSION

Therefore, based on the foregoing authority and for the reasons stated, this court finds the motion for summary judgment submitted by Continental Casualty Company [**Docket No. 14-1**] to be well taken and the same is granted. Any remaining motions are terminated. In accordance with the local rules, the court will enter a Final Judgment.

**SO ORDERED AND ADJUDGED** this the 30th day of March, 2006.

s/ HENRY T. WINGATE

CHIEF UNITED STATES DISTRICT JUDGE

Civil Action No. 3:04-cv-492 WS
Memorandum Opinion and Order

10